UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-00112-RJC

| JIMMIE KOLPIN, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 10, 13). Having fully considered the written arguments, administrative record, and applicable authority, the Court grants Plaintiff's Motion for Summary Judgment and remands this matter for further proceedings consistent with this Order.

## I.  BACKGROUND

Plaintiff Jimmie Kolpin ("Mr. Kolpin") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of his social security claim. Mr. Kolpin filed his application for disability insurance benefits on September 23, 2019, with an amended onset date of August 27, 2019. (Tr.[1] 16).

In denying Mr. Kolpin's social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 16–27). At step one, the ALJ found that Mr. Kolpin had not engaged in substantial gainful activity since the amended onset date. (*Id.* at 19). At step two, the ALJ found that Mr. Kolpin had the following combination of severe impairments: osteoarthritis; lumbar degenerative

---

[1] Citations to "Tr." throughout the Order refer to the administrative record at DE 8.

disc disease with facet arthropathy; carpal tunnel syndrome; and coronary artery disease, status-post coronary stent placement. (*Id.*). The ALJ also found that Mr. Kolpin had the following non-medically determinable impairments: learning disorder. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 20). Before moving to step four, the ALJ found that Mr. Kolpin had the residual functional capacity ("RFC") to perform medium work as explained below:

> [T]he claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c), the scope of which is determined by the following additional limitations. The claimant can frequently stoop and/or crouch. He can frequently handle and/or finger with the bilateral upper extremities.

(*Id.* at 21–22). At step four, the ALJ found that Mr. Kolpin could perform past relevant work as an automobile mechanic and found Mr. Kolpin was not disabled . (*Id.* at 33–35).

After exhausting his administrative remedies, Mr. Kolpin brought the instant action for review of Defendant's decision denying his application for disability insurance benefits under Title II of the Social Security Act. (DE 1).

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact,

if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises three challenges: (1) the ALJ failed to evaluate his ability to read and write, (2) the structure of the Social Security Administration is unconstitutional, and (3) the ALJ was not validly appointed. Remand is warranted based on Plaintiff's first challenge.

At the hearing before the ALJ, Plaintiff testified that he has difficulty reading and understanding; that he does not read newspapers, magazines, or books because he cannot understand them very well; that his wife helps him read his mail; and that in his prior job as a mechanic he had assistance at work anytime he had to read something complicated. (Tr. 42–44).

Plaintiff also testified that he received his GED in jail after teachers repeatedly went over the questions for weeks, that he received an ASE certification, and that he has a driver's license (Tr. 39–40, 54). Because of Plaintiff's alleged literacy difficulties, Plaintiff's counsel formally requested a consultative examination during both pre-hearing and post-hearing briefing. (Tr. 275; 279–80). The ALJ failed to rule upon these requests, and Plaintiff never received a consultative examination on his reading and writing abilities.

In the decision, the ALJ never discussed Plaintiff's literacy difficulties. The only mention of a mental impairment is at step two, where the ALJ discounts a potential learning disorder based on a lack of objective medical evidence.

> [T]he undersigned finds that the claimant has the following non-medically-determinable impairments: learning disorder. As regards this alleged disorder, the record is absent supporting objective medical signs derived via medically acceptable laboratory or clinical diagnostic techniques by an acceptable medical source. This condition has not been demonstrated by intelligence testing or other standardized testing of cognition or achievement, and the claimant has received no treatment for this condition. Further, mental status examinations of record have been normal.

(Tr. 20) (citations omitted). The ALJ erred by failing to evaluate Plaintiff's ability to read and write.

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion" that a witness's testimony is not credible. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). "[A]n ALJ's RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Beasley v. Berryhill*, No. 1:17-CV-00294-RJC, 2019 WL 1330928, at *5 (W.D.N.C. Mar. 25, 2019) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). "Remand may be appropriate where 'inadequacies in the ALJ's analysis frustrate meaningful

4

review.'" *Mabe v. Saul*, No. 1:19-CV-00246-RJC, 2020 WL 4505462, at *5 (W.D.N.C. Aug. 5, 2020) (quoting *Mascio*, 780 F.3d at 636). "The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Brooks v. Colvin*, 200 F. Supp. 3d 618, 621 (W.D.N.C. 2016). Courts have routinely found that literacy impairments are important issues that ALJs must address in determining whether a claimant is disabled. *Floyd v. Colvin*, No. 2:14-CV-30-RJC, 2015 WL 4920264, at *6 (W.D.N.C. Aug. 18, 2015); *Fox v. Kijakazi*, No. 2:20-cv-75-MTS, 2022 U.S. Dist. LEXIS 76137, at *11 (E.D. Mo. Apr. 27, 2022); *Chesney v. Berryhill*, No. 1:18-66-BHH-SVH, 2019 U.S. Dist. LEXIS 37958, at *59 (D.S.C. Jan. 16, 2019).

Here, there is, at a minimum, conflicting record evidence concerning Plaintiff's ability to read and write. However, the ALJ never addressed this issue, or the conflicting evidence. *Schimpf v. Astrue*, 780 F. Supp. 2d 798, 802 (S.D. Ind. 2011) (remanding because the ALJ failed to articulate any reason why the claimant fell into the limited education category rather than the illiterate category); *Silveira v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000) ("The Commissioner bears the burden of establishing that [claimant] is literate."); *cf. Chesney v. Berryhill*, No. 1:18-66-BHH-SVH, 2019 U.S. Dist. LEXIS 37958, at *58 (D.S.C. Jan. 16, 2019) (affirming when the ALJ listed "specific reasons to support his conclusion that Plaintiff was not illiterate."). This frustrates meaningful review as it is not within the purview of this Court to weigh the evidence.

Defendant's main argument, that the ALJ properly addressed Plaintiff's ability to read and write when discussing the learning disorder, is unavailing. In discussing the learning disorder, the ALJ relied on a lack of both medical evidence and intelligence testing as well as normal mental status exams to determine that a potential learning disorder was a non-medically-determinable impairment. Tellingly, the ALJ failed to discuss Plaintiff's ability to read and write when

discussing the learning disorder. Moreover, the mental status exams say nothing about Plaintiff's ability to read but rather discuss things like depression, being oriented to space and time, and sleep disorders. And the lack of objective medical and intelligence testing, which appears to be what the ALJ predominantly relied on in discounting a potential learning disorder, is troublesome to the Court as the ALJ failed to provide a consultative examination after multiple requests by Plaintiff's counsel. *Wilson v. Astrue*, No. CBD-10-1018, 2011 U.S. Dist. LEXIS 53288, *25–26 (D. Md. May 17, 2011) ("[T]he Court is troubled that the ALJ did not bother to honor Plaintiff's request . . . that a consultative examination be ordered to test his word recognition and reading comprehension.").

Thus, even assuming the "learning disorder" analysis accounted for Plaintiff's ability to read and write, the ALJ's reliance on a lack of medical or intelligence testing to support a non-medically-determinable learning disorder, where the ALJ never granted Plaintiff's request for such testing, appears at odds with the purpose of the regulations. While there is often tension over whether an ALJ should order a consultative examination, the regulations state that such an exam may be required when "the additional evidence needed is not contained in the records of your medical sources," which the ALJ admitted may be true in this case. 20 C.F.R. § 404.1519. Notably, Defendant's argument against the need for a consultative examination is simply a conclusory statement based on circular logic without any explanation:

> Where the record as a whole provides sufficient, unambiguous, and non-conflicting evidence to support the ALJ's decision, a consultative examination is not required. Here, the record as a whole was sufficient, unambiguous and non-conflicting, thus supporting the ALJ's decision to not order a consultative examination.

(DE 14 at 16) (citations omitted).

Defendant's other arguments are improper post hoc rationalizations. *Bramblett v. Colvin*, No. 2:14-CV-00011-RLV, 2016 WL 1249297, at *5 (W.D.N.C. Mar. 30, 2016) ("This Court is

6
Case 5:21-cv-00112-RJC   Document 16   Filed 08/31/22   Page 6 of 8

limited to reviewing the ALJ's decision based on the record before it (i.e., the reasons stated by the ALJ in his or her decision), and may not endorse *post hoc* justifications for the ALJ's determinations."). For instance, Defendant argues that Plaintiff's prior work history as a mechanic as well as the fact that Plaintiff received a GED and driver's license shows that he is literate. While this may be true, the ALJ never explained this in her decision. Similarly, Defendant argues that notes from Sean Sayer, Ph.D. and Keith Noles, Ph.D. support Plaintiff's literacy abilities. However, the ALJ failed to address either doctor's opinion in her decision.

Moreover, the ALJ's failure to address Plaintiff's ability to read and write is not harmless error. *Camp v. Massanari*, 22 Fed. App'x 311 (4th Cir. 2001) (a showing of prejudice is required to show an error is not harmless); *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result"). The ALJ found that Plaintiff could perform past relevant work as an automobile mechanic, which requires a language level of "3." (Tr. 26–27); DOT § 620.261-010 (Dept. of Labor 1977). However, a language level of "3" requires the ability to "[r]ead a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work." DOT, App'x C § III. It also requires the ability to "[w]rite reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech." *Id.* However, there is evidence that Plaintiff could not function at a language level "3." Mainly, that Plaintiff could not read books or magazines and that his wife has to read his mail to him. Thus, the ALJ's failure to address this is not harmless.

By ordering remand, the Court does not forecast a decision on the merits of Plaintiff's application for disability benefits. *See Patterson*, 846 F.3d at 663. "Under § 405(g), 'each final

7

decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 10), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (DE 13), is **DENIED**; and

3. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 31, 2022

Robert J. Conrad, Jr.
United States District Judge